**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

———————————————

No. 24-13135

Non-Argument Calendar

———————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

DEMARCUS LEON HILL,

*Defendant-Appellant.*

———————————————

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 1:22-cr-00306-CLM-GMB-2

———————————————

Before ROSENBAUM, GRANT, and BRASHER, Circuit Judges.

PER CURIAM:

Demarcus Leon Hill appeals his conviction for conspiracy to possess with intent to distribute fentanyl. Hill argues that there was insufficient evidence for the jury to convict him solely on the

uncorroborated testimony of his alleged co-conspirator. He further argues that the district court plainly erred in admitting evidence derived from his traffic stop for which the officer did not have reasonable suspicion. For the following reasons, both of Hill's arguments fail, and we affirm his conviction.

**I.**

In August 2021, Josh Powers, a police officer from Oxford, Alabama, and a member of a DEA task force, was parked on the median of Interstate 20 near the Georgia border. At around 4:00 p.m., Officer Powers observed a westbound white sedan with tinted windows move to the right lane as it approached him and then move back to the left lane after it passed.

Finding this unusual, Officer Powers ran the sedan's license plate through a DEA database. This database captured license plates traveling along the interstates, and it showed that at 1:30 p.m. central time that same day, the sedan had been in Georgia heading toward Atlanta. Officer Powers noted that it was odd for the sedan to have made a round trip in such a short period of time. He decided to pursue the vehicle and proceeded to travel roughly 21 miles before he caught up with it.

Officer Powers pulled the sedan over and found Hill driving the car while J.T. Toombs was sitting in the back. Officer Powers asked Hill to come and sit in the police car with him to avoid the dangers of interstate traffic and the excruciating heat. Initially, Officer Powers told Hill that he would only issue him a traffic warning, and not a ticket, for an illegal lane change. However, once in

the car, Hill started yawning, stretching, and patting his legs, which Officer Powers recognized as indicators of stress.

Officer Powers then began questioning Hill. In response to his questions, Hill said that he had been in Atlanta for three hours. This conflicted with the information in the license plate database, which showed Hill's car heading toward Atlanta a little more than two hours earlier. Hill further told Officer Powers that he and Toombs were in Atlanta to meet with some associates about a Birmingham sporting event. But Hill was unsure of the date of that event. Hill also assured Officer Powers that the car wouldn't contain anything illegal because he had previously served as the assistant to Birmingham's police chief.

Officer Powers spoke to Toombs separately. Toombs merely said that they were visiting Atlanta for the day. He said nothing about meeting with associates regarding the Birmingham sporting event.

Growing increasingly suspicious because of Hill and Toombs's inconsistent answers and Hill's evident nervousness, Officer Powers called for back-up so that he could run a canine test on the sedan. After the back-up arrived, the canine alerted to the presence of drugs in the car. Officer Powers then found a gallon-size plastic bag of blue and yellow pills inside the car. He gave Hill his *Miranda* warning, at which point Hill insisted that he did not know why Toombs wanted to go to Atlanta. Later, DEA lab results showed that the pills contained over 300 grams of fentanyl.

Hill and Toombs were then charged with (1) conspiracy to possess with intent to distribute 40 grams or more of fentanyl, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (6)(1)(B) and (2) possession with intent to distribute 40 grams or more of fentanyl, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). Before trial, the government moved to dismiss the latter charge, which the district court granted. Officer Powers testified to the above facts at Hill's trial.

In addition, Toombs testified for the government. He testified that he had met Hill at a club in Birmingham in 2015 and had paid Hill to drive him places many times. Though he testified that Hill had driven him to Atlanta once prior to the August 2021 trip, he also testified that he did not believe that Hill knew why Toombs was going to Atlanta on that first trip. He did, however, testify that he believed Hill knew the purpose of the August 2021 trip because Toombs had told Hill that the trip was for his "medicine."

Toombs further testified that, during the drive to Atlanta, Hill had told Toombs that he wanted to make more money. Toombs had taken that to mean that Hill was asking for some of the drugs. And he testified that, after he had picked up the pills, he had agreed to sell Hill about 1,000 pills for $7,500, with payment due later. Finally, he testified that the drugs found had belonged to both him and Hill.

After the government rested its case, Hill moved for a judgment of acquittal. He argued that no reasonable jury could find him guilty of conspiracy based on the uncorroborated testimony of

Toombs, and that Toombs's testimony was the only evidence that a conspiracy existed. In response, the government argued that a reasonable juror could find Hill guilty even without Toombs's testimony based on Hill's nervous behavior and the presence of the drugs during the traffic stop. The district court denied the motion.

At the conclusion of the trial, the jury found Hill guilty of the conspiracy charge. Hill appealed.

## II.

We start with Hill's argument that the government presented insufficient evidence to convict and that the district court erred in denying his motion for acquittal. We review a challenge to the sufficiency of the evidence and the denial of a motion for a judgment of acquittal *de novo*. *United States v. Beach*, 80 F.4th 1245, 1258 (11th Cir. 2023).

The district court may enter a judgment of acquittal at the close of the government's evidence or at the close of all evidence if the evidence is insufficient to sustain a conviction. Fed. R. Crim. P. 29(a). We will uphold the district court's denial of a Rule 29 motion for a judgment of acquittal "if a reasonable trier of fact could conclude that the evidence establishes the defendant's guilt beyond a reasonable doubt." *Beach*, 80 F.4th at 1255 (citation modified). We will not overturn a jury's verdict if there is any reasonable construction of the evidence that would have allowed the jury to find the defendant guilty beyond a reasonable doubt. *Id.* In other words, we will reverse a conviction based on insufficient evidence only if no reasonable trier of fact could have found the defendant guilty

beyond a reasonable doubt. *United States v. Williams*, 865 F.3d 1328, 1337 (11th Cir. 2017).

When reviewing the denial of a motion for a judgment of acquittal, we view all facts and inferences in the light most favorable to the government. *Beach*, 80 F.4th at 1255. And we have held that "testimony of a co-conspirator, even if uncorroborated, is sufficient to support a conviction." *United States v. Nerey*, 877 F.3d 956, 969 (11th Cir. 2017) (citation modified). We defer to the credibility determinations of the factfinder "unless it is contrary to the laws of nature or is so inconsistent or improbable on its face that no reasonable factfinder could accept it." *United States v. Holt*, 777 F.3d 1234, 1255-56 (11th Cir. 2015) (citation modified).

Turning to the crime of which Hill was convicted, the elements of a 21 U.S.C. § 846 charge for conspiracy to possess with intent to distribute a controlled substance are as follows: "(1) there was an agreement between two or more people to violate § 841(a)(1); (2) the defendant knew about the agreement; and (3) the defendant voluntarily joined the agreement." *United States v. Colston*, 4 F.4th 1179, 1187 (11th Cir. 2021). "A person violates § 841(a)(1) when he knowingly possesses with the intent to distribute illegal drugs of some sort, even if he does not know exactly which controlled substance it is." *Id.* (citation modified); *see also United States v. Gomez*, 905 F.2d 1513, 1514 (11th Cir. 1990) ("[I]t is well-settled that to sustain a conviction for possession with intent to distribute a controlled substance, it need not be proved that the

defendant had knowledge of the particular drug involved, as long as he knew he was dealing with a controlled substance.").

Hill argues that the government presented insufficient evidence for the jury to demonstrate the existence of these elements. As a result, Hill argues that the district court erred in denying his motion for a judgment of acquittal. His argument hinges on the testimony of his co-conspirator Toombs. Hill contends that Toombs's testimony was the only evidence that the government presented to show the existence of a conspiracy. Hill argues that this evidence should have been excluded and that, therefore, there was insufficient evidence to demonstrate a conspiracy. This argument fails.

Hill is wrong that the district court should have excluded Toombs's testimony. Hill argues that the evidence was improperly admitted under Federal Rule of Evidence 801(d)(2)(E) because the government failed to demonstrate the existence of a conspiracy by the preponderance of the evidence. *See United States v. Magluta*, 418 F.3d 1166, 1177-78 (11th Cir. 2005).

This argument fails because Rule 801(d)(2)(E) does not even apply here. That rule governs the introduction of out of court statements made by a co-conspirator; Toombs's testimony consisted entirely of in court statements about (1) his own personal knowledge, including his relationship with Hill and the events on their trip to pick up drugs in Atlanta, and (2) *Hill's* out of court comments to Toombs. This testimony was permitted under Federal Rule of Evidence 602, governing the admission of testimony based on the

witness's own experience, and Rule 801(d)(2)(A), governing the admission of testimony about the *defendant's* out of court statements to the witness. There is no requirement, under either rule, for the government to demonstrate the existence of a conspiracy before admission of the evidence. Therefore, the district court properly admitted Toombs's testimony.

Furthermore, there was enough evidence to demonstrate the existence of a conspiracy. Hill and Toombs were caught transporting the drugs that they were charged with conspiring to distribute. And Toombs testified that he and Hill agreed that Toombs would buy the pills from his Atlanta source and that Hill would then buy some of those pills from Toombs. The "testimony of a coconspirator, even if uncorroborated, is sufficient to support a conviction." *United States v. Broadwell*, 870 F.2d 594, 601 (11th Cir. 1989). Construing the evidence in the light most favorable to the verdict, there was sufficient evidence to convict Hill on the conspiracy charges. *Id.* at 601.

As a result, because the district court did not err in admitting Toombs's testimony, and because that testimony was sufficient for the jury to convict Hill on the conspiracy charge, Hill's first argument fails.

## III.

We turn now to Hill's argument that the district court should have excluded all the evidence gathered from Officer Powers's traffic stop. Hill argues that this stop violated his Fourth Amendment rights because Officer Powers lacked "specific

articulable facts of reasonable suspicion of criminal activity" when he commenced the stop.

Under Federal Rule of Criminal Procedure 12(b), a motion to suppress must be made before trial. Fed. R. Crim. P. 12(b)(3)(C). "A defendant who fails to make a timely suppression motion cannot raise that claim for the first time on appeal." *United States v. Curbelo*, 726 F.3d 1260, 1266 (11th Cir. 2013) (citation modified) (applying this rule to Fed. R. Crim. P. 12(e) pre-amendment); *see also United States v. Andres*, 960 F.3d 1310, 1316 (11th Cir. 2020) (applying *Curbelo* to Fed. R. Crim. P. 12(b)(3)(C)). We may grant relief from this waiver upon a showing of good cause. *Curbelo*, 726 F.3d at 1266; *see also Andres*, 960 F.3d at 1316. "No good cause exists if the defendant had all the information necessary to bring a Rule 12(b) motion before the date set for pretrial motions but failed to file it by that date." *Curbelo*, 726 F.3d at 1267 (citation modified); *see also Andres*, 960 F.3d at 1316. If no good cause exists, we may nevertheless review the district court's failure to suppress the evidence for plain error. *Andres*, 960 F.3d at 1316.

Here, Hill failed to preserve his argument that the district court should have suppressed the evidence from the traffic stop because he did not move to suppress this evidence before trial and has not shown good cause to grant relief from that waiver. Therefore, our review is limited to a plain error analysis. *Andres*, 960 F.3d at 1316. And "[t]o prevail under the plain error standard, an appellant must show: (1) an error occurred; (2) the error was plain; (3) it affected his substantial rights; and (4) it seriously affected the

fairness of the judicial proceedings." *United States v. Ramirez-Flores*, 743 F.3d 816, 822 (11th Cir. 2014). "An error is plain if controlling precedent from the Supreme Court or the Eleventh Circuit establishes that an error has occurred." *Id.* (citation modified).

For Hill to demonstrate plain error here, he would have to show that binding precedent made plain that Officer Powers violated Hill's Fourth Amendment rights by conducting the traffic stop. The Fourth Amendment protects defendants against "unreasonable . . . seizures." And a traffic stop constitutes an unreasonable seizure unless it is supported by reasonable suspicion that either a traffic violation or criminal activity occurred. *United States v. Campbell*, 26 F.4th 860, 880 (11th Cir. 2022). In determining whether "reasonable suspicion" exists, we look to the "totality of the circumstances" to determine "whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002).

Based on this standard and the record before us, we cannot say that the district court committed plain error in admitting the evidence gathered during the traffic stop. At trial, Officer Powers testified that he conducted the traffic stop because (1) Hill made unusual lane changes to distance himself from Powers's patrol car and (2) the license place database showed that Hill had made a suspiciously quick round trip to Atlanta. Drawing on his experience as an officer, as is permitted under Supreme Court precedent, Powers determined that these circumstances gave him the necessary "reasonable suspicion" of criminal activity to justify a traffic stop. *See*

24-13135                Opinion of the Court                11

*Arvizu*, 534 U.S. at 273. And because Hill does not, and cannot, point to any "controlling precedent from the Supreme Court or the Eleventh Circuit" that would make these circumstances insufficient for demonstrating reasonable suspicion, we cannot find that the district court committed plain error. *Ramirez-Flores*, 743 F.3d at 822. Therefore, Hill's second argument fails as well.

As a result, Hill's conviction is **AFFIRMED.**